UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JUNIOR JUMPP, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | :    3:20cv1477 (KAD) |
| MAUREEN M. KEEGAN, et al., | : |
|     Defendants. | : |

## INITIAL REVIEW ORDER

On September 29, 2020, the plaintiff, Junior Jumpp ("Jumpp"), a pretrial detainee in the custody of the Department of Correction ("DOC"), filed this civil rights action pursuant to title 42 U.S.C. § 1983 against Connecticut state Judges Maureen M. Deegan and Tammy D. Geathers, Prosecutor Marcia A. Pillsbury, Governor Ned Lamont, and Chief Court Administrator Partrick Carroll. ECF No. 1. On that same date, Jumpp also filed a motion for leave to proceed *in forma pauperis*. ECF No. 2.

Jumpp's complaint asserts that he is being subjected to excessive bail, which serves to punish him for crimes without conviction and results in his exposure to COVID-19 while incarcerated. ECF No. 1 at 1. He alleges that Judge Keegan has ruled on several motions and permitted Attorney Pillsbury to remain as prosecutor in this case, although a state prosecutor is an alleged victim of Jumpp. *Id.* at ¶¶ 1-2. He indicates further that that Governor Lamont and Chief Court Administrator Carroll have ignored his letters about the danger posed to him by exposure to COVID-19, and Judges Keegan and Geathers have denied his motions to modify his bail bond. *Id.* at ¶¶ 3-5. Finally, he maintains that Attorney Pillsbury harasses him and has subjected him to excessive bail. *Id.* at ¶ 6. He seeks damages and injunctive relief.

1

For the following reasons, the motion to proceed *in forma pauperis* is DENIED and the complaint is DISMISSED with prejudice.

**`IN FORMA PAUPERIS`**

"To help staunch a 'flood of nonmeritorious' prisoner litigation, the Prison Litigation Reform Act of 1995 (PLRA) established what has become known as the three-strikes rule." *Lomax v. Ortiz-Marquez*, 140 S.Ct. 1721, 1723 (U.S. June 8, 2020) (citing *Jones v. Bock*, 549 U.S. 199, 203 (2007)). The three strikes rule "generally prevents a prisoner from bringing suit *in forma pauperis* (IFP)—that is, without first paying the filing fee—if he has had three or more prior suits 'dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted.'" *Id.* (citing 28 U.S.C. § 1915(g)).

When enacted, the PLRA amended the statute governing proceedings filed IFP, 28 U.S.C. § 1915, by adding the following subsection:

> (g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

In the context of this statutory scheme, the imminent danger exception is designed to provide "a *safety valve* for the three strikes rule." *Malik v. McGinnis,* 293 F.3d 559, 563 (2d Cir. 2002) (emphasis added and internal quotations omitted) (quoting *Abdul–Akbar v. McKelvie,* 239 F.3d 307, 315 (3d Cir. 2001)). "Its unmistakable purpose is to permit an indigent three-strikes prisoner to proceed IFP in order to obtain a judicial remedy for an imminent danger." *Pettus v. Morganthau*, 554 F.3d 293, 297 (2d Cir. 2009).

Jumpp has had more than three cases dismissed as frivolous. *See, e.g., Jumpp v. Marinelli*, 3:13cv615 (AWT) (dismissed June 28, 2013); *Jumpp v. Reyes*, 3:13cv637 (AWT) (dismissed May 13, 2013); *Jumpp v. DOC*, 3:13cv505 (AWT) (dismissed May 13, 2013). Because the so-called three strikes provision applies here, Jumpp may not bring this action without paying the filing fee absent allegations of "imminent danger of serious physical injury." *See Pettus*, 554 F.3d at 297 ("indigent three-strikes prisoner [may] proceed IFP in order to obtain a judicial remedy for an imminent danger"). In this regard, Jumpp must meet two requirements: (1) the imminent danger of serious physical injury he alleges is fairly traceable to the unlawful conduct alleged in the complaint, and (2) a favorable judicial outcome would redress the injury. *See id.* at 296-97. In addition, the danger of imminent harm must be present at the time the complaint is filed. *See id.* at 296. As the Second Circuit explained:

> Section 1915(g)'s exception "can serve its role as an escape hatch for genuine emergencies only if understood reasonably." *Lewis v. Sullivan,* 279 F.3d 526, 531 (7th Cir.2002). Absent some nexus between a complaint's claims and its allegation that a plaintiff is under imminent danger of serious physical harm, the injury-in-fact that Congress so carefully excepted from the general requirement that a three-strikes litigant pay his filing fees could go unaddressed by the litigation—a result clearly contrary to the *raison d'être* of the exception itself. When, in contrast, a complaint seeks to redress an imminent danger that is fairly traceable to allegedly unlawful conduct complained of in the pleading, the three strikes litigant has shown that he fits squarely within § 1915(g)'s "escape hatch" and that payment of a filing fee should be excused.

*Id.*

Jumpp's alleges that incarceration exposes him to COVID-19, which in turn poses a danger to him because of his health conditions. However, his allegations fail to raise an inference that he is in imminent danger of contracting COVID-19 or that he is particularly vulnerable to the virus and its effects.   Accordingly, the motion to proceed *in forma pauperis* is DENIED.

Because the Court concludes that Jumpp's claims are frivolous, the Court will dismiss the complaint rather than require Jumpp to pay the filing fee.

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**ABSOLUTE IMMUNITY**

"[O]fficials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Sanchez v.*

*Doyle*, 254 F. Supp. 2d 266, 271 (D. Conn. 2003). "The law affords judges absolute immunity from personal liability for acts 'committed within their judicial jurisdiction,' however erroneous the act and regardless of motivation." *Tapp v. Champagne*, 164 F. App'x 106, 107-08 (2d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967)). The same absolute immunity protects prosecutors from suit "for their conduct in initiating a prosecution and in presenting the State's case ... insofar as that conduct is intimately associated with the judicial phase of the process." *Burns v. Reed*, 500 U.S. 478, 485 (1991) (internal quotation marks and citation omitted). Both judicial and prosecutorial immunity "act as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (citations omitted). This immunity applies even against allegations of bad faith or malice. *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).

Thus, Judge Keegan and Judge Geathers are absolutely immune from § 1983 liability in connection with setting bail for Jumpp or with respect to judicial decisions made in connection with his criminal prosecution. Similarly, Attorney Pillsbury is absolutely immune for steps taken in the prosecution of Jumpp. *See Root v. Liston*, 444 F.3d 127, 132–35 (2d Cir. 2006) (absolute judicial immunity barred plaintiff's challenge to a prosecutor's directive to increase arrestee's bond); *Sanchez*, 254 F. Supp. 2d 266, 271 (D. Conn. 2003) ("setting bail is judicial act."); *see also Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013) (summary order) (affirming that "[t]he entry of a protective order by a judge in a court of general jurisdiction is plainly a 'judicial' action shielded by absolute immunity"); *El Ex-Relatione Dawes v. Whitehead*, No. 3:18-CV-02033 (CSH), 2019 WL 5394578, at *9 (D. Conn. Oct. 22, 2019) (noting that ["presiding over a trial, rendering a verdict, and sentencing a defendant fall squarely within a judge's judicial function within his [or her] jurisdiction") (citing *Hili v. Sciarrotta*, 140 F.3d 210,

213 (2d Cir. 1998)). Governor Lamont and Chief Court Administrator Carroll are also entitled to absolute immunity from Jumpp's derivative supervisory claims against them. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536-37 (2d Cir. 1993) (supervisory official is entitled to same immunity defenses as defendant involved with underlying claim); *see also Jamison v. Fischer*, 617 F. App'x 25, 28 (2d Cir. 2015) (summary order) (concluding that derivative claim against supervisor was barred by qualified immunity for the same reasons applicable to underlying claim).

Accordingly, Jumpp's claims for damages against all defendants are dismissed with prejudice. *See Giles v. Fitzgerald*, No. 520CV0980MADML, 2020 WL 6287459, at *9 (N.D.N.Y. Oct. 27, 2020); dismissing claims based on absolute immunity with prejudice); *Staton v. Holzbach*, 20-CV-0631, 2020 WL 6119382, at *3 (D. Conn. Oct. 16, 2020) (dismissing with prejudice claims against the defendant prosecutor based on the doctrine of prosecutorial immunity).

**ROOKER-FELDMAN DOCTRINE**

Jumpp seeks injunctive relief, specifically an order that he be released from custody or that "a reasonable bail amount" be set. However, these requests seek to undo the determinations of the state court and are barred under the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). The *Rooker-Feldman* doctrine recognizes that, except for the Supreme Court, federal courts are not authorized to exercise appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007). Under this doctrine, federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings

6

commenced and inviting district court review and rejection of those judgments[.]" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Thus, *Rooker-Feldman* applies where the federal-court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The *Rooker-Feldman* doctrine therefore precludes this Court from reviewing the adverse state-court judgments that Jumpp asserts in his federal complaint.[1] The Complaint must be dismissed on this basis.

## *YOUNGER* ABSTENTION

In addition, in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court identified "one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 72–73 (2013). The Supreme court "has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, see *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), or that implicate a State's interest in enforcing the orders and judgments of its courts, see *Pennzoil Co. v. Texaco Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)." *Id.* Jumpp's request of the federal court to "set a reasonable bail" or order his release from custody in his pending criminal cases, falls squarely within the *Younger* doctrine and affords an

---

[1] To the extent Jumpp seeks monetary damages from the defendants, who are state officials, in their official capacities, his claims are barred by the Eleventh Amendment and must be dismissed. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

additional basis upon which the complaint should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, the motion to proceed *in forma pauperis* [ECF No. 2] is DENIED and the complaint is DISMISSED in its entirety with prejudice. See 28 U.S.C. §1915A(b). The clerk is instructed to close this case.

**SO ORDERED** this 30th day of October 2020, at Bridgeport, Connecticut.

_/s/_____
Kari A. Dooley
United States District Judge